# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BLAKE WILSON**, | Case No. 3:17-cv-2054-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **BRISTOL-MYERS SQUIBB COMPANY, BILL NICHOLS, JR.,** and **DOES 1 to 10**, | |
| Defendants. | |

Lisanne M. Butterfield and Emil J. Ali, Carr Butterfield, LLC, 5285 Meadows Road, Suite 199, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Melinda S. Riechert, Kristin L. Bremer Moore, and Lindsay Reynolds, Tonkon Torp, LLP, 1600 Pioneer Tower, 888 SW Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Blake Wilson ("Wilson") commenced this lawsuit in Oregon state court, alleging employment-related claims against Defendants Bristol-Myers Squibb Company ("BMS"), Bill Nichols, Jr. ("Nichols") (collectively, "Defendants"), and Does 1 through 10. Both Wilson and Nichols were employed by BMS. Defendants removed the action to federal court. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.*, Defendants move for an order compelling Wilson to arbitrate his claims. Defendants base their motion on a Mutual Arbitration

Agreement ("Agreement") that BMS entered into with all of its non-unionized employees in the United States. BMS and Wilson entered into the Agreement well after Wilson began working for BMS. The Agreement requires an employee to arbitrate all disputes, claims, complaints, or controversies (collectively, "Claims") that "you have now, or at any time in the future may have, against" BMS or any of its officers or employees. Reciprocally, the Agreement also requires BMS to arbitrate all Claims that it "has now or at any time in the future may have against" the employee. Although many of the key events that support Wilson's claims occurred before he entered into the Agreement, Wilson filed this lawsuit afterward. For the reasons that follow, Defendants' motion to compel arbitration is granted and this case is dismissed without prejudice.

## STANDARDS

The FAA applies to all contracts involving interstate commerce and specifies that "written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). When a contract contains an arbitration clause, a presumption of arbitrability exists. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (stating that the party "challenging the enforceability of an arbitration agreement bear[s] the burden of proving that the provision is unenforceable"). Additionally, when "parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the 'law's permissive policies in respect to arbitration' counsel that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (emphasis in original) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)).

The text of the FAA "leaves no place for the exercise of discretion by a district court," but instead "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (emphasis in original) (citing 9 U.S.C. §§ 3-4). The district court must limit itself "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

## BACKGROUND

BMS is a Delaware corporation that conducts business across the United States, selling products shipped in interstate commerce. In July 2013, BMS hired Wilson as a Territory Business Manager ("TBM"). As alleged in his Complaint, throughout 2015 and 2016, Wilson sought promotion within BMS to the position of District Manager. Wilson received positive and favorable performance reviews and produced exemplary sales figures that were recognized and rewarded within BMS. Several BMS managers wrote letters of recommendation in support of Wilson's application for a District Manager position.

As part of his work for BMS, Wilson attended an international medical conference in Vienna, Austria in April 2015. Nichols also attended that conference as part of his work as a national sales and marketing executive for BMS. As alleged in the Complaint, during their time together in Vienna, Nichols pressured Wilson to spend time with Nichols at sexually explicit nude adult bars. Wilson declined, but considered Nichols' pressure to be harassing. In May 2015, Wilson reported this harassment to the acting director of Human Resources for BMS. Wilson also reported that he had witnessed Nichols sexually harassing other BMS subordinates. According to Wilson, BMS management threatened and coerced Wilson to try to get him to drop

his harassment allegations because Nichols' conduct occurred outside the United States and during Nichols' personal, or off-duty, time.

In June 2015 and August 2015, Wilson was nominated for promotion to the position of Executive TBM. In that position, Wilson would have received a pay raise and eligibility for an increase in his bonus target. After Nichols saw a copy of the August 2015 promotion nomination of Wilson, Nichols informed Wilson that Nichols would not support Wilson's promotion because he was not a team player and failed to demonstrate that he knew "his place" in the organization.

On December 15, 2015, BMS sent an email to its employees, including Wilson. BMS explained that it was implementing a new alternative dispute resolution ("ADR") policy with all of its non-unionized employees in the United States. The notice explained that both BMS and all non-unionized United States employees must agree to mandatory, binding arbitration for any employment-related disputes that either side may have against the other. The email contained a link to the Mutual Arbitration Agreement. BMS directed these employees to review and accept the Agreement before January 22, 2016. Each of these employees was required to accept this Agreement in order to remain employed with BMS, to be eligible for the 2016 bonus plan, and to be eligible for the 2016 incentive compensation plan. Eligibility for BMS's 2015 bonus plan and 2015 incentive compensation plan, however, were not conditioned on an employee accepting the Agreement. Twice in January 2016, BMS sent reminders to employees who had not yet signed the Agreement. On January 20, 2016, Wilson electronically signed the Mutual Arbitration Agreement, confirming his acceptance of the terms of the Agreement.

Also in January 2016, according to Wilson, a BMS management representative acknowledged Wilson's exemplary job performance and informed him that he would receive a promotion. Also in January 2016, Nichols threatened Wilson with termination of his employment

if Wilson continued to contact Nichols regarding the status of Wilson's promotion. During the first six months of 2016, Wilson received positive feedback from BMS, but also continued to receive threats and negative comments from Nichols. Wilson contends that Nichols' negative performance comments were pretext.

In June 2016, Wilson and Nichols met, during which Nichols threatened to put Wilson on a performance improvement plan if Wilson did not drop his allegations that Nichols had engaged in harassment. Wilson perceived this to be a threat that Nichols would retaliate against Wilson if he continued to maintain his allegations. In August 2016, Wilson was denied his expected promotion. Wilson alleges that in October 2016, he was constructively discharged from BMS and effectively forced to resign.

Wilson filed this lawsuit in state court on September 29, 2017. In his Complaint, Wilson alleged the following six claims under Oregon law: (1) unlawful employment practices by creating a hostile work environment and sexual harassment; (2) retaliation for opposing unlawful employment practices; (3) whistleblower retaliation for opposing unlawful employment practices; (4) aiding and abetting; (5) constructive discharge; and (6) intentional infliction of emotional distress. Defendants removed the action to federal court based on diversity of citizenship. Defendants now move to compel Wilson to present his dispute in arbitration, rather than before a federal court and jury.

## DISCUSSION

Defendants argue that under the Agreement, Wilson may pursue his employment-related claims against BMS and its employees only in arbitration. In response, Wilson makes three alternative arguments. First, Wilson asserts that the conduct giving rise to his claims occurred before he entered into the Agreement, that the Agreement does not expressly state that it applies retroactively to claims existing before the Agreement, and thus Wilson may pursue those claims

in court. Second, Wilson argues that the Agreement is unenforceable due to a lack of

consideration. Third, Plaintiff asserts that the Agreement is void or voidable as unconscionable.

## A.  Events Occurring and Claims Arising before January 20, 2016

Wilson electronically signed the Mutual Arbitration Agreement on January 20, 2016. He

argues that "[n]othing in the purported Arbitration Agreement speaks to coverage of conduct or

claims that occurred *prior to* the execution of the Agreement." Thus, Wilson contends, he did not

"agree to waive his rights to resolve his then-existing claims through the court system, rather

than arbitration."

Contrary to Wilson's argument, however, the Mutual Arbitration Agreement expressly

states:

> Except as expressly set forth in Section 3, titled "Claims Not
> Covered by this Agreement," all disputes, claims, complaints, or
> controversies ("Claims") *that you have now*, or at any time in the
> future may have, against Bristol-Myers Squibb Company [are
> subject to mandatory arbitration under this Agreement].

Mutual Arbitration Agreement § 1(a) (emphasis added) (ECF 7-4 at 1).

The Court concludes that the reference in the Agreement to claims "that you have now"

unambiguously refers to Wilson's then-existing claims and disputes with BMS, *i.e.*, all disputes,

claims, complaints, or controversies in existence at the time that the parties entered into the

Agreement. *See, e.g.*, *Newhall v. Chase Home Fin. LLC*, 2010 WL 8759340, at *1 (M.D. Fla.,

Dec. 22, 2010) (finding that arbitration agreement providing for arbitration of claims "that I have

or in the future may have" includes claims accruing before the agreement is signed and applies

retroactively) (relying on earlier findings from *Newhall v. Chase Home Fin. LLC*, 2010

WL 4387517, at *6 n.4 (D.N.J. Oct. 28, 2010)). Accordingly, the Agreement applies to all of

Wilson's claims and disputes with BMS that existed as of January 20, 2016, including claims or

disputes based on alleged conduct that took place in April 2015. Thus, the fact that Wilson's

claims and disputes may have arisen, or be based on conduct that occurred, before January 20,

2016, when Wilson and BMS entered into the Mutual Arbitration Agreement, does not render the

Agreement inapplicable to Wilson's claims asserted in this lawsuit. As the Ninth Circuit has

explained:

> "Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal quotation marks omitted), when examining the scope of an arbitration agreement, "[a]s with any other contract dispute, we first look to the express terms [of the parties' agreement]." If the text is plain and unambiguous, that is the end of our analysis in this case because we "must rigorously enforce arbitration agreements according to their terms" under both the FAA and [state] law.

*United States ex rel. Welch v. My Left Foot Children's Therapy*, LLC, 871 F.3d 791, 796 (9th

Cir. 2017) (citations omitted) (final alteration added, earlier alterations in original).

## B. Consideration

Oregon courts do not require anything more than continued employment in consideration

for signing an arbitration agreement. Thus, even if Wilson had received nothing more than

continued at-will employment in exchange for his acceptance of the Agreement, continued

employment alone is sufficient consideration under Oregon law. *See, e.g., Gray v. Rent-A-Center

West, Inc.*, 2007 WL 283035, at *4 (D. Or. Jan. 24, 2007) ("for an at-will employee, continued

employment provides sufficient consideration for any modification to the original employment

contract"); *McHorse v. Portland General Elec. Co.*, 288 Or. 323, 331 (1974) (an offer to

employee to change terms of employment can be accepted by employee's continued

employment); *see also Noorzai v. Dabella Exteriors, LLC*, 2015 WL 5037669, at *5 (D. Or.

Aug. 25, 2015) ("[U]nder Oregon law, a promise of continued employment for an 'at will'

employee is valid consideration when the contract is expressly or impliedly made a condition of

employment.").

In addition, under Oregon law, a mutual agreement to arbitrate is adequate consideration to enforce the Agreement. *See Noorzai*, 2015 WL 5037669, at *5 ("The Acknowledgment is supported by consideration because it encompasses claims brought by either Noorzai or DaBella. Reciprocal forbearance of the right to a judicial forum is valid consideration under Oregon law."). Because the Agreement requires not only that Wilson arbitrate any claims that he may have against BMS, but also that BMS must arbitrate any claims that it may have against Wilson, the Agreement does not lack consideration.

## C. Unconscionability

"Like other contracts, arbitration agreements can be invalidated for fraud, duress, or unconscionability." *Chavarria v. Ralphs Grocery Co.*, F.3d 916, 921 (9th Cir. 2013). "The party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614 (2007). Unconscionability is a question of law determined by the court "based on the facts in existence at the time the contract was made." *Id.*

There are two types of unconscionability—procedural and substantive. "Procedural unconscionability refers to the conditions of contract formation and focuses on two factors: oppression and surprise." *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014). "Substantive unconscionability, on the other hand, generally refers to the terms of the contract, rather than the circumstances of formation, and focuses on whether the substantive terms contravene the public interest or public policy." *Id.*

In considering the "oppression" prong of procedural unconscionability, a court should consider whether "there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice." *Id.* Evidence of oppression can include "gross inequality of bargaining power, a take-it-or-leave-it

bargaining stance, and the fact that a contract involves a consumer transaction." *Id.* The

"surprise" prong of procedural unconscionability, on the other hand, "involves whether terms

were hidden or obscure from the vantage of the party seeking to avoid them . . . . such as

ambiguous contract wording and fine print." *Id.* Although some jurisdictions require both

substantive and procedural unconscionability to invalidate a contract, in its 2014 decision in

*Bagley*, the Oregon Supreme Court expressly declined to resolve that question. *Id.*

> In earlier cases, however, the Oregon Court of Appeals noted:

>> "The primary focus . . . appears to be relatively clear: substantial
>> disparity in bargaining power, combined with terms that are
>> unreasonably favorable to the party with the greater power may
>> result in a contract or contractual provision being unconscionable.
>> Unconscionability may involve deception, compulsion, or lack of
>> genuine consent, although usually not to the extent that would
>> justify rescission under the principles applicable to that remedy.
>> The substantive fairness of the challenged terms is always an
>> essential issue."

*Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 566 (2007) (quoting *Carey v. Lincoln

Loan Co.*, 203 Or. App. 399, 422-23 (2005)). After these earlier decisions from the Oregon Court

of Appeals, but before the Oregon Supreme Court's 2014 decision in *Bagley*, the Ninth Circuit,

interpreting Oregon law, stated: "Although both forms of unconscionability 'are relevant, . . .

only substantive unconscionability is absolutely necessary.'" *Chalk v. T-Mobile USA, Inc.*, 560

F.3d 1087, 1093 (9th Cir. 2009) (quoting *Vasquez-Lopez*, 210 Or. App. at 566).

The "surprise" prong of procedural unconscionability is not asserted by Wilson in this

case. Instead, he focuses on the "oppression" prong. Oppression involves "inequality in

bargaining power between the parties, resulting in no real opportunity to negotiate the terms of

the contract and the absence of meaningful choice." *Bagley*, 356 Or. at 555. This may include a

"take-it-or-leave it" contract, when there is unequal bargaining power. *Id.*; *Reeves v. Chem

Industrial Co.*, 262 Or. 95, 101 (1972). The Oregon Court of Appeals, however, has found "take-

it-or-leave it" arbitration contracts in the context of beginning new employment not to be procedurally unconscionable. *See Sprague v. Quality Restaurants Northwest, Inc.*, 213 Or. App. 521, 526 (2007) ("We therefore conclude that, procedurally, the agreement was no more unconscionable than the typical employment, consumer, or service contracts that are a common feature of contemporary commercial life and that Oregonians sign (and Oregon courts enforce) as a matter of course."); *see also Motsinger*, 211 Or. App. at 617.

Wilson has not identified any case law showing that whether a mandatory arbitration agreement is presented to a prospective employee, as opposed to a current employee as a continuation of at-will employment, is a material difference for purposes of evaluating the "oppression" prong of procedural unconscionability. Wilson cites to *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137 (2010), in which the Oregon Court of Appeals reversed the lower court's refusal to enforce an arbitration clause. The appellate court held that there was no procedural unconscionability, despite the unequal bargaining power of the parties. *Id*. at 152. The court noted that even though the agreement was presented on a "take-it-or-leave-it" basis, it was not a contract of adhesion because the plaintiff, who was highly educated, had the opportunity to review the employment agreement for two weeks and had signed and returned it without making any changes. *Id*. Although Wilson was presented with the Agreement after he had already been working at BMS for more than two years, he was notified well in advance of the deadline to agree to the arbitration provision, and he signed the Agreement without making any changes. Further, Wilson has not identified any Oregon case law or statutory provision showing that a mutually binding mandatory arbitration term in an employment agreement is *per se* substantively unconscionable. Thus, the Court need not evaluate whether any such provision, if it were to exist in Oregon law, would be preempted by the FAA. *See generally AT&T Mobility, LLC v.*

*Concepcion*, 563 U.S. 333 (2011) (holding that FAA preempts state contract law that deems class-action waivers in arbitration agreements unenforceable when certain criteria are met).

**CONCLUSION**

Defendants' Motion to Compel Arbitration (ECF 5) is GRANTED. Because nothing productive would be gained by staying this case, rather than dismissing it, this case is dismissed without prejudice.

**IT IS SO ORDERED**.

DATED this 11th day of May, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge